IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEVON PARK BIOVENTURES, L.P., | : | |
| Movant, | : | |
| | : | |
| v. | : | Civ. No. 11-3044 |
| | : | |
| SEBASTIAN HOLDINGS, INC., | : | |
| Respondent. | : | |
| | : | |
| Diamond, J. | : | February 10, 2012 |

**MEMORANDUM**

Following an arbitration, the Honorable Jane Cutler Greenspan ordered Respondent Sebastian Holdings, Inc. to pay $2,712,500 to Movant Devon Park Bioventures, L.P., plus attorneys' fees and interest. The Arbitrator also ordered Sebastian to place $12,987,500 in escrow. Devon Park filed the instant Motion to Confirm Arbitration Award *(Doc. No. 1)*, and Sebastian Holdings filed a Cross-Motion to Vacate Arbitration Awards. (*Doc. No. 7.*) For the reasons that follow, I will confirm the Award.

**I.   BACKGROUND**

Devon Park is a Delaware limited partnership, created to invest in developing medical therapies. *(Doc. No. 1.)* General Partner Devon Park Associates, L.P. manages the Partnership and periodically calls for capital from the limited partners to fund investments. *(*Second Amended and Restated Partnership Agreement ¶ 3.2.*)* As described below, pursuant to contract, limited partners must provide capital to the General Partner as sought in each capital call. *(*Id.*)*

A "sophisticated investment firm," Sebastian Holdings is a foreign corporation formed under the laws of the Turks & Caicos Islands in the British West Indies. *(Doc. No. 1-3 at 5.)*

Sebastian's sole director and shareholder is Alexander Vik. *(Doc. No. 11 at 6.)* In 2005, Sebastian agreed to provide $25 million in investment funds to Devon Park over five years as required by the General Partner. *(*Id. at 5.*)* In February 2006, Sebastian also entered into an Amended and Restated Limited Agreement of Partnership with Devon Park, thus becoming a limited partner. The Parties entered into a Second Amended and Restated Limited Partnership Agreement ("Agreement") in December 2006. *(*Id.*)* In all iterations of the contract, Sebastian made the same $25 million-five year capital commitment. *(*Id.*)*

On September 16, 2008, the General Partner issued a capital call to invest in two companies. Under the Agreement, Sebastian was obliged to contribute $2,687,500 to Devon Park by October 1, 2008. When Sebastian failed to do so, Devon Park declared Sebastian to be in default and, pursuant to the Agreement, called for the arbitration of this dispute. *(Doc. No. 11 at 6.)*

On April 2, April 3, and May 5, 2009, the Parties presented evidence, testimony, and legal argument to the Arbitrator—former Chief Magistrate Judge James R. Melinson. On July 7, 2009, Judge Melinson concluded "that Sebastian was obligated to make [payment on] the capital call," and awarded Devon Park the $2,687,500 it had sought from Sebastian, plus attorneys' fees and interest (as provided for in the Agreement). Judge Melinson declined, however, to order Sebastian to place the balance of its $25 million investment commitment into an escrow account. *(Doc No. 1-3 at 18.)* He believed "that the parties can continue to meet their respective obligations honorably." *(*Id.*)*

Sebastian did not comply with Judge Melinson's Award, thus compelling Devon Park to seek relief in this Court. On September 8, 2009, Devon Park moved to confirm Judge Melinson's arbitration award, and I granted the Motion. Devon Park Bioventures, L.P. v.

Sebastian Holdings Inc., No. 09-4085 (E.D. Pa. Dec. 3, 2009).  Sebastian appealed, and on November 16, 2010, the Third Circuit affirmed.  Devon Park Bioventures L.P. v. Sebastian Holdings, Inc., 401 F. App'x 647, 648 (3d Cir. 2010).

Devon Park issued three subsequent capital calls: on April, 23, 2010 for $150,000; on May 19, 2010 for $1,750,000; and on January 3, 2011 for $812,500.  *(Doc No. 11* at 6.*)*  Contrary to Judge Melinson's hope, however, Sebastian did not "continue to meet [its] obligations honorably," refusing all three calls.  Devon Park declared Sebastian to be in default, and again went to arbitration.  *(*Id.*)*

## II.     THE ARBITRATOR'S DECISION

The arbitration took place before Justice Greenspan on February 14, 2011.  In addition to seeking payment for the missed capital calls, Devon Park asked the Arbitrator to place in escrow Sebastian's remaining investment obligation of $12,987,500.  *(Doc. No. 1-3* at 4.*)* The only evidence Sebastian presented was the testimony of Mr. Vik, who largely repeated the arguments Judge Melinson had rejected, and insisted that Sebastian was not obligated to honor the capital calls because Devon Park had breached the Agreement. Justice Greenspan was underwhelmed by Mr. Vik's testimony:

> [W]hen specifically asked to state in what way Devon Park breached the Agreement, [Mr. Vik] responded that he delegated these responsibilities and was not involved enough to know and left it to others. *(Doc. 1-3*, at 4.*)*

The Arbitrator thus found that Mr. Vik had failed to justify Sebastian's refusal to honor Devon Park's capital calls.  *(*Id.*)*  Significantly, Justice Greenspan also found that when asked whether Sebastian would honor its future obligations, Mr. Vik gave no such assurance.  *(*Id. at 6.*)*

Justice Greenspan credited the testimony of Devon Park general partner Dr. Kantesaria,

who explained that Sebastian's failures had significantly impaired the fund and the other partners. (Id.) Without Sebastian's contributions, the Partnership had been left without the money necessary to invest in promising opportunities, and this uncertainty had hampered the Partnership's ability to raise additional capital. Dr. Kantesaria also testified that the time and expense incurred arbitrating and litigating against Sebastian had substantially diverted Devon Park from its business objectives. (Id.)

The Arbitrator ordered Sebastian to pay $2,712,500 for the three capital calls it had missed, and to deposit in escrow its remaining investment obligation of $12,987,500. She also awarded Devon Park $77,382.49 in attorneys' fees and costs. (Id. at 6-7.)

Devon Park has filed the instant Motion to Confirm Arbitration Award. (Doc. No. 1.) In its Cross-Motion to Vacate, Sebastian argues that in granting the escrow award, the Arbitrator impermissibly contravened the Agreement and Delaware law. (Doc No. 7 at 6.) Significantly, Sebastian does not challenge the award of $2,712,500 for the missed capital calls. Although in its Cross-Motion Sebastian purports to challenge the award of attorneys' fees and costs, Sebastian's supporting Memorandum is completely silent on this subject. (Id. at 8.) See Agreement ¶ 3.6 (allowing the Partnership to collect attorneys' fees and costs for legal proceedings relating to a defaulting partner).

### III.    LEGAL STANDARDS

It is "well established that the 'court's function in confirming or vacating a commercial [arbitration] award is severely limited.'" Mut. Fire, Marine & Inland Ins. Co. v. Norad Rein. Co., 868 F.2d 52, 56 (3d Cir. 1989) (quoting Swift Indus., Inc. v. Botany Indus., Inc., 466 F.2d 1125, 1130 (3d Cir. 1972));  see also Piller v. Valentino, 106 F. App'x 119, 120 (3d Cir. 2004) ("The courts have very limited discretion to disturb an arbitration award.") (citations omitted).

Under the Federal Arbitration Act,

> [i]f the parties . . . have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

9 U.S.C. § 9 (2011).

Paragraph 13.8 of the Agreement allows "any court having jurisdiction" to enter judgment on the Arbitrator's Award. *(*Agreement ¶ 13.8.*)* Moreover, "[a]ny award shall be final, binding and conclusive upon the parties." *(*Id.*)* Accordingly, I must confirm the Award unless grounds for *vacatur* exist under the FAA.

A court may vacate an arbitration award "where the arbitrators exceeded their powers . . . ." 9 U.S.C. § 10(a)(4). I may vacate the Arbitration Award pursuant to this provision, however, only if I find that: (1) the form of the Award cannot "be rationally derived either from the agreement between the parties or from the parties submissions to the arbitrator[]"; and (2) the terms of the Award are "completely irrational." Mut. Fire, 868 F.2d at 56 (citing Swift, 466 F.2d at 1131). In performing this analysis, I "may not take issue with the arbitrator['s] interpretation of the contract. Nor can [I] consider whether the arbitrator[] committed an error of law." Sun Ship, Inc. v. Matson Navigation Co., 785 F.2d 59, 62 (3d Cir. 1986).

### IV.   DISCUSSION

Sebastian argues that under the Agreement, Devon Park is limited to two remedies: 1) Section 3.6(a) requires a defaulting partner to pay for any legal costs and expenses, plus interest on the missed capital calls at 10% above the prime rate; and 2) Section 3.6(b) permits the General Partner to reduce the defaulting limited partner's capital account by up to 75 percent and

to distribute these funds to the other limited partners.  Upon election of this second remedy, the defaulting entity ceases to be a partner and has no further interest, rights, or claim in or against Devon Park, including the right or obligation to meet any future capital calls.  *(Doc. No. 7 at 6-7.)*

Sebastian has ignored Agreement Section 3.6(c), which provides:

> In the event that the General Partner determines in its sole and absolute discretion that the interest of the Partnership would be better served by treating a Defaulting Partner in a different manner than is specified in Paragraphs 3.6(a) and 3.6(b), the General Partner may elect in its sole and absolute discretion to . . . impose any one or more remedies at law or in equity available to it, in addition, or in the alternative, to any or all of the remedies specified in Paragraphs 3.6(a) and 3.6(b).

This provision afforded Justice Greenspan considerable discretion; she was not limited to the remedies set out in Sections 3.6(a) or (b).  Sebastian nonetheless argues that the creation of an escrow account is impermissible because it contravenes Agreement Section 3.2(a) (setting out the procedures for capital contributions) and Section 3.6(d) (setting out the procedures for challenging a capital call as unlawful).  I disagree.

There is nothing in Section 3.2(a) that precludes the creation of an escrow account.  In relevant part, that Section provides only that capital contributions are payable by wire transfer in installments as determined by the General Partner upon ten days written notice.  *(*Agreement ¶ 3.2(a).*)*

The Arbitrator's creation of an escrow account does not contravene Section 3.2(a); it simply requires Sebastian to fulfill its contractual obligation to comply with Devon Park's capital calls.  The Award provides that withdrawals from the account can be made only to satisfy capital calls issued by Devon Park, and that Sebastian will receive interest and any remaining money at the close of the fund.  *(Doc. No. 1-3 at 7.)*  Accordingly, the escrow account does not alter the

way capital calls are made under Section 3.2(a).  It merely provides Devon Park with a more certain means of obtaining Sebastian's contribution.

Nor, as Sebastian claims, is it prevented from delivering an opinion of counsel under Section 3.6(d) that any particular capital call is unlawful. The contractually required procedures would still obtain.  Devon Park would continue to be obliged to consider such a letter and, should Devon Park's General Partner find the letter to be reasonably acceptable, Sebastian would be excused from making that capital contribution and the disputed amount would not be withdrawn from the escrow account.

Sebastian also contends that the escrow award has no foundation in Delaware law. Sebastian relies upon § 17-502(c) of Delaware's Revised Uniform Limited Partnership Act, which provides:

> A partnership agreement may provide that the interest of any partner who fails to make any contribution that he or she is obligated to make shall be subject to specified penalties for, or specified consequences of, such failure. Such penalty or consequence may take the form of reducing or eliminating the defaulting partner's proportionate interest in the limited partnership, subordinating the partnership interest to that of nondefaulting partners, a forced sale of his or her partnership interest, forfeiture of that partnership interest, the lending by other partners of the amount necessary to meet his or her commitment, a fixing of the value of that partnership interest by appraisal or by formula and redemption or sale of the partnership interest at such value, ***or other penalty or consequence***. (emphasis added).

According to Sebastian, because paragraphs 3.6(a) and 3.6(b) of the Agreement include specified remedies, only those remedies are "available."  Section 17-502(c)'s  final clause provides, however, that available remedies include other penalties or consequences not specifically mentioned in the statute, and the Agreement explicitly provides that the General Partner may impose equitable remedies beyond those specified in 3.6(a) and (b).

Moreover, a preceding paragraph of § 17-502 provides as follows:

> If a partner does not make the required contribution of property or services, he or she is obligated at the option of the limited partnership to contribute cash equal to that portion of the agreed value (as stated in the records of the limited partnership) of the contribution that has not been made . . . The foregoing option shall be in addition to, and not in lieu of, any other rights, ***including the right to specific performance***, that the limited partnership may have against such partner under the partnership agreement or applicable law. 6 Del. C. § 17-502 (a)(1)-(2) (emphasis added).

The equitable remedy of specific performance, which Sebastian argues has no basis in Delaware law, is thus available in the statute Sebastian concedes governs partnership agreements.

Finally, Sebastian argues that the creation of the escrow account deprives it of the "right" to "efficient" breach of contract: Sebastian's "right" to breach the Agreement and pay damages. Sebastian has distorted the well-established doctrine limiting the remedy for breach of contract to payment of damages unless the contract or the law otherwise provides for equitable remedies. See <u>Gotham Partners, L.P., v. Hallwood Realty Partners, L.P.</u>, 817 A.2d 160, 176 (Del. 2002); <u>Eureka VIII LLC v. Niagara Falls Holdings LLC</u>, 899 A.2d 95, 107 (Del. Ch. 2006). As I have discussed, here the Agreement and Delaware law both provide for equitable remedies in the event of a breach. Accordingly, Sebastian's "right" to "efficient" breach is not abrogated.

### V. CONCLUSION

In 2009, Judge Melinson declined to create an escrow account in the hope that "the parties can continue to meet their respective obligations honorably." *(Doc. No. 1-3 at 18.)* Sebastian's continual failure to meet its obligations—and Vik's refusal to state that it would meet its future obligations—convinced Justice Greenspan that a stronger remedy was required. ("While Judge Melinson in the first arbitration refused the escrow request stating that Sebastian would 'honor' its future obligations, unfortunately that has not occurred.") *(Id.* at 6.*)* Justice

Greenspan thus ordered the escrow account's creation in response to Sebastian's repeated, meritless attempts to circumvent its contractual obligations.

I well understand that the Court is not a "rubber stamp" for the Arbitrator. Matteson v. Ryder System Inc., 99 F.3d 108, 113 (3d Cir. 1996). Accordingly, when an arbitrator has rendered an irrational decision or one that is wholly outside the underlying arbitration agreement, I have not hesitated to overturn the award. PMA Capital Ins. Co. v. Platinum Underwriters Bermuda, Ltd., 659 F. Supp.2d 631 (E.D. Pa. 2009) (vacating arbitration award), aff'd, 400 F. App'x 654 (3d Cir. 2010). This simply is not the case here, however.

That Sebastian and Mr. Vik apparently regret entering into the Agreement hardly means that the Arbitrator's Award cannot be rationally derived from the Agreement. On the contrary, the Award is plainly intended to enforce the Agreement. In these circumstances, Sebastian has failed to show that the Award should be vacated. Mut. Fire, Marine & Inland Ins. Co. v. Norad Rein. Co., 868 F.2d 52, 56 (3d Cir. 1989).

Finally, I note that Justice Greenspan denied Devon Park's request for punitive damages because "the intent necessary to support such a measure has not been demonstrated here." *(Doc. No. 1-3 at 6.)* For the second time, Sebastian and Mr. Vik have refused to honor their contractual obligations without any credible legal basis. Mr. Vik has implied that he will continue to do so. If Devon Park is thus compelled to call for a third arbitration—with its attendant cost and delay—the arbitrator may wish carefully to consider whether Sebastian and Mr. Vik are proceeding in good faith.

An appropriate Order follows.

*/s/ Paul S. Diamond*
Paul S. Diamond, J.